1   COOLEY LLP
    MICHAEL G. RHODES (116127)
2   (rhodesmg@cooley.com)
    WHITTY SOMVICHIAN (194463)
3   (wsomvichian@cooley.com)
    COLIN S. SCOTT (318555)
4   (cscott@cooley.com)
    101 California Street, 5th Floor
5   San Francisco, CA 94111-5800
    Telephone:   (415) 693-2000
6   Facsimile:   (415) 693-2222

7   PRIYAMVADA ARORA (301207)
    (parora@cooley.com)
8   3175 Hanover Street
    Palo Alto, CA 94304-1130
9   Telephone:   (650) 843-5000
    Facsimile:   (650) 849-7400

10

11  Attorneys for Defendant
    MICROSOFT CORPORATION

12

13                      UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15                            OAKLAND DIVISION

16

17

18  FRANK D. RUSSO, KOONAN              Case No. 4:20-cv-04818-YGR
    LITIGATION CONSULTING, LLC and
19  SUMNER M. DAVENPORT &               **CLASS ACTION**
    ASSOCIATES, LLC, on behalf of a similarly
20  situated class,                     **DEFENDANT MICROSOFT
                                        CORPORATION'S REPLY IN SUPPORT OF
21            Plaintiffs,               ITS MOTION TO DISMISS PLAINTIFFS'
                                        COMPLAINT**
22       v.
                                        Date: December 22, 2020
23  MICROSOFT CORPORATION,              Time: 2:00 p.m.
                                        Hon. Yvonne Gonzalez Rogers
24            Defendant.

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT .................................................................................................................... 2

    A.   Plaintiffs Do Not Allege Facts Showing the Supposed Practices Applied to
        Them. .......................................................................................................................... 2

    B.   Plaintiffs Do Not Allege Facts Showing the Alleged Practices Involved Their
        Communications, Defeating the WTA, SCA, and WPA Claims ................................ 4

    C.   Plaintiffs' WTA Claim Fails Because Plaintiffs Do Not Allege Interception in
        Transmission and the OCB Exception Applies. ....................................................... 6

    D.   Plaintiffs' SCA Claim Also Fails Because the "Necessarily Incident"
        Exception Applies and the SCA Does Not Apply Absent Disclosure ........................ 8

    E.   The WPA Does Not Apply to Out-of-State Businesses and Absent Injury ................ 9

    F.   Plaintiffs Do Not Allege Essential Elements of Their CPA Claim. ......................... 11

        1.   Plaintiffs Fail to Satisfy Rule 9(b). ............................................................ 11

        2.   Plaintiffs Do Not Allege Facts Showing Causation ..................................... 11

        3.   Plaintiffs Do Not Allege Facts Showing Injury. .......................................... 13

    G.   Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion. ................................ 13

III. CONCLUSION ................................................................................................................ 15

Cooley LLP
Attorneys At Law
San Francisco

-i-

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Douglas Cable Commc'ns*,
    929 F.Supp. 1362 (D. Kan. 1996) .................................................................15

*Amati v. City of Woodstock*,
    176 F.3d 952 (7th Cir. 1999) ........................................................................8

*Anderson v. Blockbuster Inc.*,
    No. 2:10-cv00158, 2010 WL 1797249 (E.D. Cal. May 4, 2010) ...........................4

*BedRoc Ltd. v. United States*,
    541 U.S. 176 (2004) .....................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................4

*Benson v. JPMorgan Chase Bank, N.A.*,
    673 F.3d 1207 (9th Cir. 2012) .......................................................................9

*Brinkley v. Monterey Fin. Servs.*,
    16-cv-1103, 2019 WL 4295327 (S.D. Cal. May 6, 2019) ...................................10

*Brinkley v. Monterey Fin. Servs., LLC*,
    340 F.Supp.3d 1036 (S.D. Cal. 2018) ...........................................................10

*Buckley v. Santander Consumer USA, Inc.*,
    No. C17-5813, 2018 WL 1532671 (W.D. Wash. Mar. 29, 2018) ...................14, 15

*Cahen v. Toyota Motor Corp.*,
    717 F. App'x 720 (9th Cir. 2017) ...........................................................12, 13

*Campbell v. Facebook*,
    77 F.Supp.3d 836 (N.D. Cal. 2014) .........................................................7, 8

*Cousineau v. Microsoft Corp.*,
    992 F.Supp.2d 1116 (W.D. Wash. 2012) .........................................................6

*Crowley v. CyberSource Corp.*,
    166 F.Supp.2d 1263 (N.D. Cal. 2001) .............................................................6

*Fischer v. Mt. Olive Lutheran Church, Inc.*,
    207 F.Supp.2d 914 (W.D. Wis. 2002) ...........................................................15

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal.App.4th 986 (2011) .........................................................................15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-ii-

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR

# TABLE OF AUTHORITIES
## Continued

Page(s)

*Global Policy Partners, LLC v. Yessin*,
  686 F.Supp.2d 631 (E.D. Va. 2009) ........................................................6

*In re Google Assistant Privacy Litig.*,
  457 F.Supp.3d 797 (N.D. Cal. 2020) .......................................................5

*In re Google Inc. Gmail Litigation*,
  No. 13-MD-2430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....................6, 8

*Grigsby v. Valve Corp.*,
  No. C12-0553, 2013 WL 12310666 (W.D. Wash. Mar. 18, 2013) ...................11

*Hernandez v. Path, Inc.*,
  No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ...............6

*Jinni Tech Ltd. v. Red.com, Inc.*,
  No. C17-0217, 2017 WL 4758761 (W.D. Wash. Oct. 20, 2017) ....................10

*Kadoranian v. Bellingham Police Dep't*,
  829 P.2d 1061 (Wash. 1992)...............................................................10

*Kelley v. Microsoft Corporation*,
  251 F.R.D. 544 (W.D. Wash. 2008) ......................................................13

*Keodalah v. Allstate Ins. Co.*,
  449 P.3d 1040 (Wash. 2019)...............................................................13

*Marsh v. Zaazoom Sols., LLC*,
  No. C-11-05226, 2012 WL 952226 (N.D. Cal. Mar. 20, 2012) .......................6

*Matera v. Google Inc.*,
  No. 15-cv-04062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ..................6, 8

*Morgan v. Aurora Loan Servs., LLC*,
  646 F. App'x 546 (9th Cir. 2016) .........................................................13

*Murphy v. Spring*,
  58 F.Supp.3d 1241 (N.D. Okla. 2014)....................................................15

*Opperman v. Path, Inc.*,
  87 F.Supp.3d 1018 (N.D. Cal. 2015).................................................14, 15

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  No. 3:15-MD-2633, 2017 WL 539578 (D. Or. Feb. 9, 2017) .......................12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iii-

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR

**TABLE OF AUTHORITIES**
Continued

Page(s)

*Roy v. Contra Costa Cnty.*,
No. 15-CV-02672, 2015 WL 5698743 (N.D. Cal. Sept. 29, 2015) ..........................9

*Schnall v. AT & T Wireless Servs., Inc.*,
259 P.3d 129 (Wash. 2011)................................................................................12

*Singh v. Google LLC*,
No. 16-CV-03734, 2018 WL 984854 (N.D. Cal. Feb. 20, 2018) ..........................4

*United States v. Flores*,
729 F.3d 910 (9th Cir. 2013) ............................................................................9

*United States ex rel. Vatan v. QTC Med. Servs., Inc.*,
721 F. App'x 662 (9th Cir. 2018) ......................................................................5

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
643 F.Supp.2d 1256 (W.D. Wash. 2009)............................................................11

*VTT Tech. Research Ctr. of Finland, Ltd. v. SiTime Corp.*,
No. 19-CV-01174, 2019 WL 2503658 (N.D. Cal. June 17, 2019)........................5

*Washington v. Fowler*,
139 P.3d 342 (Wash. 2006)................................................................................10

*Washington v. O'Neill*,
700 P.2d 711 (Wash. 1985)................................................................................9

*Water & Sanitation Health, Inc. v. Rainforest Alliance, Inc.*,
No. C15-75, 2015 WL 12657110 (W.D. Wash. Dec. 29, 2015)............................11

*In re Yahoo Mail Litig.*,
7 F.Supp.3d 1016 (N.D. Cal. 2014) ..................................................................5, 7

**Statutes**

18 U.S.C.
§ 2510(5)(a)(ii)..............................................................................................8
§§ 2702(a)(1)-(3)............................................................................................9

RCW 9.73.030 ................................................................................................10

Stored Communications Act ........................................................................ *passim*

Wash. Rev. Code § 9.73.060............................................................................9, 10

Washington Consumer Protection Act............................................................ *passim*

Cooley LLP
Attorneys At Law
San Francisco

-iv-

**Defendant Microsoft Corporation's
Reply ISO Motion To Dismiss;
Case No. 4:20-cv-04818-YGR**

**TABLE OF AUTHORITIES**
**Continued**

Page(s)

Washington Privacy Act ....................................................................................... *passim*

Wiretap Act ........................................................................................................... *passim*

**Other Authorities**

Rule
   9(b)....................................................................................................................11
   12(b)(6) .......................................................................................................13, 15
   23............................................................................................................................4

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

–V–

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR

## I.      INTRODUCTION

Microsoft showed Plaintiffs (a) have not identified a single instance in which any of *their* data was disclosed or misused without their consent; (b) have not alleged a single representation on which *they* relied in deciding to buy Microsoft 365 services; and (c) have effectively admitted they got the services they paid for—including services that *protect* their data from malware, phishing, and other harms.  Plaintiffs offer no meaningful response to these dispositive points.  Instead, they ask the Court simply to credit their bare assertions and legal conclusions as if they were factual allegations.  That does not suffice, and the Court should grant Microsoft's Motion to Dismiss with prejudice for the reasons stated in Microsoft's Motion and below:

*First*, Plaintiffs' opposition confirms they base their claims on general allegations about hypothetical experiences of hypothetical members of the proposed class—not factual allegations about their own experiences.  Plaintiffs may not resort to the class action device to avoid their burden to plead facts establishing their own claims.  Because Plaintiffs have not alleged facts plausibly showing any one of them experienced the alleged practices at issue, the Court should dismiss the Complaint.

*Second*, because Plaintiffs rely entirely on generalized allegations, their Complaint fails to plausibly show that any of *their* communications were the subject of the alleged data practices.  This defeats their Wiretap Act ("WTA"), Stored Communications Act ("SCA"), and Washington Privacy Act ("WPA") claims.

*Third*, Plaintiffs' WTA claim also fails because, as they admit, the WTA applies only to interceptions of communications "in transmission," yet Plaintiffs rest their claim on alleged practices occurring after data has been received and stored on Microsoft's systems—not in transmission.  Even if that were otherwise (and it is not), the WTA claim would still fail because Plaintiffs' own allegations show the alleged practices have a "nexus" to Microsoft's services that benefit Microsoft's users, which Plaintiffs agree triggers the "ordinary course of its business" ("OCB") exception to liability.

*Fourth*, by acknowledging a "nexus" suffices to invoke the OCB exception to the WTA, Plaintiffs have also effectively conceded the similar "necessarily incidental" exception to liability under the SCA applies.  Indeed, Plaintiffs do not dispute that the necessarily incidental exception applies to a broader scope of Microsoft's services than does the OCB exception.  This supplies an

additional basis for dismissing Plaintiffs' SCA claim.   In addition, Plaintiffs' SCA claim based on Microsoft's own alleged use of Microsoft 365 customer data fails because it admittedly lacks the third-party disclosure necessary to state such a claim.

*Fifth*, Plaintiffs acknowledge the WPA applies only to "private communications," but allege no facts allowing the Court to infer Microsoft intercepted any of *their* communications, much less "private" ones.  This requires dismissing Plaintiffs' WPA claim.

*Sixth*, Plaintiffs' Washington Consumer Protection Act ("CPA") claim fails because (a) they admit they pursue a deception theory but do not identify any representations they reviewed or relied upon in buying Microsoft 365 services; and (b) they do not dispute they failed to allege any facts plausibly showing Microsoft's alleged conduct *caused* any one of them CPA injury.  Plaintiffs suggests these elements may be presumed because the alleged misstatements were contained in their contracts with Microsoft.  But (tellingly) Plaintiffs do not bring a breach of contract claim, do not cite a CPA case recognizing any such presumption, and do not allege they read the contracts.  Under settled Washington law, a CPA plaintiff must allege facts establishing but-for causation—which is distinguishable from reliance—and injury.  Plaintiffs have not done so.

*Finally*, Plaintiffs concede corporate plaintiffs may not bring an intrusion upon seclusion claim, leaving only Plaintiff Russo.  But the allegations in the Complaint confirm he sues to vindicate his business, rather than personal, interests, defeating his claim.

## II.  ARGUMENT

### A.  Plaintiffs Do Not Allege Facts Showing the Supposed Practices Applied to Them.

As Microsoft showed in its Motion, the Complaint does not allege facts plausibly showing the alleged practices applied to Plaintiffs. Mot. at 6-8.  For instance, Plaintiffs do not allege facts showing they used (a) Microsoft 365's communications features (necessary for the WTA, SCA, and WPA claims), (b) the optional Facebook Connect function (necessary to support their theory of disclosure to Facebook), or (c) any third-party applications that integrate with Microsoft 365 (necessary to support their theory of disclosure to third-party app developers), among other omissions.  *Id.* at 6-8. In response, Plaintiffs insist "[t]he complaint contains the allegations Microsoft says aren't there,"

Cooley LLP
Attorneys At Law
San Francisco

2.

**Defendant Microsoft Corporation's
Reply ISO Motion To Dismiss;
Case No. 4:20-cv-04818-YGR**

pointing to Complaint paragraphs 83-84, 87, 141, 143, 172-174. Opp. at 6:7-11, 7:20-27. But none of these paragraphs contains factual allegations specific to these Plaintiffs.

*First*, most of these paragraphs do not relate to Plaintiffs at all, but rather to unidentified "business customers." *See* Compl. ¶ 81 ("Microsoft shares its *business customers'* data with third-party developers…"), ¶ 83 ("Microsoft allows those third-party developers to search the content of its *business customers'* emails…"), ¶ 87 (Microsoft uses and shares *business customers'* data …") (emphases added). But as Plaintiffs admit, (Opp. at 6), they cannot rely on the experiences of *others* to state their individual claims. *See* Mot. at 7. This is particularly so given (a) the "business customers" of Microsoft 365 run the gamut from individuals to the largest corporations in the world, (*see* Compl. ¶ 116 (defining the class to include "[a]ll persons and non-governmental entities")), and (b) Microsoft 365 encompasses a broad "suite" of services and features used in different ways and offered through different bundles (*see id.* ¶ 46 (acknowledging Microsoft 365 encompasses a "suite of software products"), ¶ 116 (listing 16 different software packages implicated by the Complaint), Somvichian Declaration Ex. C (listing three different Microsoft 365 packages, with different features and services)).

*Second*, Plaintiffs quote certain allegations that nominally refer to "Plaintiffs," but the full text of these allegations (which Plaintiffs obscure with ellipses) shows they are in truth generic statements about "Plaintiffs *and Class Members*." These allegations contain no individualized facts about the Plaintiffs' actual experiences. Plaintiffs specifically direct the Court to the following allegations:

- "Microsoft unlawfully intercepted in transmission, disclosed, and used without consent Plaintiffs' *and Class Members'* data in the following non-exhaustive ways: a. Microsoft obtained the content of *their* emails, documents, contacts, calendars, location data, audio files, photographs, and video files; b. Microsoft shared *that* data with unauthorized third parties, . . ." Compl. ¶ 141a, b (emphases added);

- "For example, in the case of emails sent by Plaintiffs *and Class Members*, the intended recipient was not Microsoft, but the person or entity to whom the email was addressed." *Id.* ¶ 143 (emphasis added);

- "Microsoft obtained the content of Plaintiffs' *and Class Members* emails and other private communications, without consent." *Id.* ¶ 172 (emphasis added); and

- "Microsoft shared *that* content with unauthorized third parties" and "Microsoft used *that* content to glean business intelligence and develop new products[.]" *Id.* ¶¶ 173, 174 (referring to the preceding allegation in Paragraph 172).

1    Numerous courts have refused to allow generic allegations such as these to stand in for factual

2    allegations of a named plaintiff's own experience.  For example, in *Singh v. Google LLC*, the plaintiff

3    alleged "***Plaintiff and class members*** have been charged for, . . . invalid and/or fraudulent clicks," and

4    defendant Google's "acts and practices caused injuries that ***Plaintiff and class members*** could not

5    have reasonably avoided[.]"  No. 16-CV-03734-BLF, Dkt. No. 65, ¶¶ 9, 142 (emphases added).  The

6    court dismissed the complaint because these allegations did not state sufficient facts about the

7    plaintiff's "personal experience" to state a claim, despite the references to "Plaintiff."  *Singh*, No. 16-

8    CV-03734, 2018 WL 984854, at *2, *5 (N.D. Cal. Feb. 20, 2018).  The court further explained that

9    "the class experience cannot serve as a substitute[.]"  *Id.*  Similarly, in *Anderson v. Blockbuster Inc.*,

10   the court granted a motion to dismiss a class action complaint for overtime in which plaintiff alleged

11   "***Plaintiff and class members*** consistently worked in excess of eight hours in a day, in excess of 12

12   hours in a day and/or in excess of 40 hours in a week."  No. 2:10-cv00158, 2010 WL 1797249, at *2-

13   3 (E.D. Cal. May 4, 2010) (emphasis added).  The court held these allegations to be "no more than

14   conclusions, [and] not entitled to the assumption of truth."  *Id.* (citation omitted).

15       As in *Singh* and *Anderson*, Plaintiffs here rely on generic statements about "Plaintiffs and Class

16   Members."  But as those courts recognized, such generic statements say nothing about Plaintiffs'

17   "personal experience" with the alleged practices in the Complaint.  Instead, Plaintiffs' generic

18   allegations are merely sweeping "conclusions … not entitled to the assumption of truth," *id.*, and

19   lacking in the "factual enhancement" necessary to state a plausible claim, *Bell Atl. Corp. v. Twombly*,

20   550 U.S. 544, 557-58 (2007) (affirming dismissal of complaint alleging defendants conspired to fix

21   prices because these allegations required "factual enhancement" to state a plausible claim).  At bottom,

22   Plaintiffs seek to assert claims based on hypothetical experiences of others through the Rule 23 device.

23   That, the law does not allow, and the Court should dismiss the Complaint.

24       **B.    Plaintiffs Do Not Allege Facts Showing the Alleged Practices Involved
                Their Communications, Defeating the WTA, SCA, and WPA Claims.**

25       Plaintiffs agree they must allege facts showing the alleged data practices involved the

26   "contents" of their communications to state their WTA and SCA claims, and the contents of their

27   "private communications" to state a WPA claim.  Opp. at 7.  They plead no such facts.  *See* Mot. at

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR

9:21-10:10.  Instead, they respond with a straw-man, arguing they do not need to "identify specific conversations" or "specific pieces of data that Microsoft used and abused" to state these claims.  Opp. at 6-7 (citing *In re Google Assistant Privacy Litig.*, 457 F.Supp.3d 797, 816 (N.D. Cal. 2020)).  But Microsoft did not so argue.  Rather, Microsoft showed the WTA, SCA, and WPA claims fail because Plaintiffs simply conclude they are "regular users of Office 365" (Compl. ¶¶ 15, 23, 34), without alleging they used Microsoft 365's *communications* features.  *See* Mot. at 9-10; *In re Google Assistant Privacy Litig.*, 457 F.Supp.3d at 817 (dismissing WTA claim where plaintiffs alleged they "interacted with" the alleged intercepting device "repeatedly" but did not allege facts showing their private conversations could have been recorded).  Plaintiffs fail to allege such facts even though they are uniquely situated to state whether and how they used Microsoft 365's communications services.[1]

It makes no difference that *if* a Plaintiff pleads facts plausibly alleging a WPA claim, the question whether defendant intercepted a "private" communication may be a "question of fact."  Opp. at 8:1-2.  But this case is at the pleading stage, and at that stage Plaintiffs must allege facts plausibly showing Microsoft intercepted their communications and that those communications were "private."  Plaintiffs may not meet this burden by simply incanting the phrase "private communications" without any supporting facts.  Indeed, this is precisely the sort of conclusory pleading even Plaintiffs' own case law recognizes as insufficient.  *See* Opp. at 10 (citing *In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1039 (N.D. Cal. 2014) (dismissing California constitutional privacy claim as insufficiently pled because plaintiffs merely concluded they "reasonably expect[ed] that their email communications with Yahoo Mail users [were] private")); *see also In re Google Assistant Privacy Litig.*, 457 F.Supp.3d at 816.  Here, Plaintiffs fail to allege facts plausibly showing Microsoft intercepted *any* of their

---

[1] Plaintiffs' cases have no bearing here.  *See* Opp. at 7 (citing *VTT Tech. Research Ctr. of Finland, Ltd. v. SiTime Corp.*, No. 19-CV-01174, 2019 WL 2503658, at *2 (N.D. Cal. June 17, 2019), *United States ex rel. Vatan v. QTC Med. Servs., Inc.*, 721 F. App'x 662, 663 (9th Cir. 2018)).  The plaintiff in *VTT* attached to its complaint "a claim chart that provide[d] detailed factual allegations" to support plaintiff's patent infringement claim.  *VTT Tech.*, 2019 WL 2503658, at *1.  Plaintiffs allege no such "detailed factual allegations" here.  And in *Vatan*, the court held the plaintiff was not required to plead specific terms in a contract between defendant and a third party, which terms were exclusively in defendant's control, and it was sufficient that the plaintiff pleaded the "nature of that contract."  721 F. App'x at 664.  In contrast, Plaintiffs here fail to plead facts in *their* control—namely, facts showing they used Microsoft 365 communications services and the "nature" of any such communications.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR

communications, let alone any facts showing any such communications were "private." *Cousineau v. Microsoft Corp.*, 992 F.Supp.2d 1116, 1129 (W.D. Wash. 2012) (dismissing WPA claim where the complaint involved alleged interception of "neither a communication nor a conversation").[2]

### C. Plaintiffs' WTA Claim Fails Because Plaintiffs Do Not Allege Interception in Transmission and the OCB Exception Applies.

Plaintiffs do not dispute that the WTA applies only to interceptions of communications in "transmission" and so cannot apply to data already received by the ECS provider. Mot. at 11:6-15; Opp at 9. Instead, Plaintiffs argue it is enough that the Complaint intones the words "intercepted in transmission" without alleging any supporting facts, because "only defendants have the relevant details[.]" Opp. at 9-10. But no additional "details" are "relevant" where the Complaint makes readily apparent that Plaintiffs' claims involve data sent to and received by Microsoft as an ECS provider. Mot. at 11:18-23; *see also Marsh v. Zaazoom Sols., LLC*, No. C-11-05226, 2012 WL 952226, at *17 (N.D. Cal. Mar. 20, 2012) (granting motion to dismiss WTA claim because "the receipt of information intentionally transmitted from Plaintiffs to Zaazoom Defendants' Payday Loan Websites is not interception"). In these circumstances, the repeated use of the term "interception" in the Complaint carries no weight. *See, e.g.*, *Crowley v. CyberSource Corp.*, 166 F.Supp.2d 1263, 1268 (N.D. Cal. 2001) (courts should "not accept a conclusory allegation that conduct alleged in the complaint constituted an interception under the Wiretap Act"); *Global Policy Partners, LLC v. Yessin*, 686 F.Supp.2d 631, 639 (E.D. Va. 2009) (granting motion to dismiss WTA claim even though complaint repeatedly used the word "intercepted" because "mere use of the word, even repeatedly, does not make it so"); *Hernandez*, 2012 WL 5194120, at *3 (granting motion to dismiss WTA claim because there were no allegations of an interception "in transmission").

Plaintiffs' cases do not support a contrary result. *Matera v. Google Inc.*, No. 15-cv-04062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) and *In re Google Inc. Gmail Litigation*, No. 13-MD-

---

[2] In any event, even if Plaintiffs had alleged facts to show their communications were intercepted, their claims predicated on disclosures to Facebook would still fail. Plaintiffs do not dispute that the Facebook feature involved only contact information; nor do they dispute that contact information is not a communication within the meaning of the WTA, SCA, and WPA. *See* Mot. at 10:11-16; *see also Hernandez v. Path, Inc.,* No. 12-CV-01515 YGR, 2012 WL 5194120, at *4 (N.D. Cal. Oct. 19, 2012) ("Contact Address Books are not a communication to which the SCA applies"). These undisputed points are dispositive and compel dismissing this theory.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-cv-04818-YGR

2430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) do not even address the issue whether an "interception" was "in transmission," so the cases do not apply. Opp. at 10. In *Campbell v. Facebook*, 77 F.Supp.3d 836, 840-41 (N.D. Cal. 2014), and *In re Yahoo Mail Litigation*, plaintiffs pleaded specific facts about the alleged method of "interception." *See Campbell*, 77 F.Supp.3d at 840-41 (relying on allegation that Facebook used "a software application called a 'web crawler' to scan any URLs that are contained in messages and to send server requests to that web page," in finding sufficient allegations of an "interception"); *In re Yahoo*, 7 F.Supp.3d at 1027-28 (relying on allegation that the email scanning at issue occurred "before placing the emails into storage"). In contrast, Plaintiffs' conclusory assertions lack any similar factual allegations. *See, e.g.*, Compl. ¶ 141 (concluding Microsoft "unlawfully intercepted in transmission" and "obtained the content of" data in the abstract, without alleging facts to plausibly show any data was obtained while in transmission).

In any event, the OCB exception applies. Plaintiffs concede the exception applies wherever there is a "'nexus' between the interception and [the ECS provider's] ability to provide the service at issue – here, the Microsoft 365 services that the Plaintiffs purchased." Opp. at 12. Plaintiffs do not oppose Microsoft's Request for Judicial Notice, which attaches materials confirming that certain specific services referenced in the Complaint were or are part of Microsoft 365. Somvichian Decl., Exs. A, B, C, F, & G. Having so conceded, Plaintiffs may not base a WTA claim on the alleged disclosure or use of data to enable the "Facebook-sharing 'feature'" (Compl. ¶¶ 75-76), third-party applications (*id*. ¶¶ 81-86), Cortana (*id*. ¶ 97), or Advanced Threat Protection (*id*. ¶ 96), because each of these services were or are integrated parts of Microsoft 365—indeed, Advanced Threat Protection is a service designed to *protect* Microsoft 365 users like Plaintiffs from security threats. *See* Mot. at 5 & n.3, 13-14. Plaintiffs do not respond to these points.

Rather, they argue the alleged use of Microsoft 365 users' data to provide certain other security services falls outside the exception because they conclude these specific services are not directly integrated with Microsoft 365 and "do not facilitate the services Plaintiffs purchased." Opp. at 11:13-21. Plaintiffs do not dispute, however, that these security services benefit Microsoft's enterprise users by guarding against various security threats and that it is within Microsoft's ordinary business to protect its users in these ways. *See* Mot. at 5 & n.3; Somvichian Decl., Exs. D (materials describing

Cooley LLP
Attorneys At Law
San Francisco

7.

Defendant Microsoft Corporation's
Reply ISO Motion To Dismiss;
Case No. 4:20-cv-04818-YGR

Azure Advanced Threat Protection), E (materials describing Windows Defender Application Control). These services thus fall within the plain terms of the OCB exception.  18 U.S.C. § 2510(5)(a)(ii).

Plaintiffs point to cases finding that scanning user content to deliver targeted advertising does not fall within the OCB exception.  *See Campbell*, 77 F.Supp.3d at 844 (involving scanning private messages for advertising purposes); *Matera*, 2016 WL 8200619, at *6 (involving scanning emails to provide targeted advertising); *In re Google Inc.*, 2013 WL 5423918, at *11 (similar).  But the alleged wrongful practices here do not involve targeted advertising.  On the face of Plaintiffs' own Complaint, this case involves the alleged use of data to enable features or extensions of Microsoft 365—including vital security features—for the benefit of *Microsoft's users*, not advertisers or other third-parties.  That makes this case wholly unlike those Plaintiffs cite.  Plaintiffs' passing reference to Microsoft's Audience Network advertising platform is of no moment. Plaintiffs do not (and cannot) allege any facts from which the Court could conclude Audience Network uses the contents of Microsoft 365 enterprise customers' communications.  *See* Mot. at 14 n.10; Compl. ¶ 95.

Plaintiffs seek to save their WTA claim by arguing the use of Microsoft 365 enterprise customers' data to develop "new products" cannot be within the OCB exception "when that is explicitly prohibited in its agreement with Plaintiffs[.]" Opp. at 11.  As a threshold matter, Plaintiffs allege no facts plausibly showing Microsoft used their data to develop "new products" without their consent, and tellingly do not assert a breach of contract claim.  Moreover, Plaintiffs' argument hinges the OCB exception on notice, but the WTA does not require notice of the "ordinary course of business" use for the exception to apply.  *See Amati v. City of Woodstock*, 176 F.3d 952, 955 (7th Cir. 1999). The OCB exception thus applies even if Plaintiffs had alleged an interception in transmission (and they did not).

### D.  Plaintiffs' SCA Claim Also Fails Because the "Necessarily Incident" Exception Applies and the SCA Does Not Apply Absent Disclosure.

Microsoft showed the "necessarily incident" exception to the SCA applies here.  Mot. at 14-15. Plaintiffs do not meaningfully respond, concluding only that the exception fails "for the same reason[]" as the WTA's OCB exception.  Opp. at 13.  But the "necessarily incident" exception applies to Microsoft in its capacity as an ECS provider *and* as a "remote computing services" ("RCS")

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR

provider, which includes "data 'storage,' and 'computer . . . processing[.]'" Mot. at 15. This makes the exception broader than the OCB exception. Plaintiffs offer no response and effectively concede Microsoft's arguments. *Roy v. Contra Costa Cnty.*, No. 15-CV-02672, 2015 WL 5698743, at *3 n.7 (N.D. Cal. Sept. 29, 2015) ("When a non-moving party's opposition to a motion to dismiss fails to address the moving party's arguments regarding certain claims, the non-moving party has conceded that those claims fail."). Further, any SCA claim based on Microsoft's own alleged use of Plaintiffs' data fails because such a claim necessarily does not involve a third-party disclosure. 18 U.S.C. §§ 2702(a)(1)-(3). Plaintiffs may not avoid this outcome by pivoting to other liability theories involving alleged disclosures to third parties. *See* Opp. at 13; *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1216 (9th Cir. 2012) ("We frequently dismiss those portions of a claim that are barred[.]").

### E.    The WPA Does Not Apply to Out-of-State Businesses and Absent Injury.

Plaintiffs claim business entities are "persons" protected by the WPA, but ignore that Section 9.73.060 limits a private right of action to "persons" who can show a violation "injured ***his or her*** business, ***his or her*** person, or ***his or her*** reputation." Wash. Rev. Code § 9.73.060 (emphasis added). This language plainly focuses on individual people and would be nonsensical if applied to LLCs such as the Koonan and Davenport plaintiffs. *Id.*; *see also id.* (allowing persons who can show injury to "his or her" business, person, or reputation, to recover for "mental pain and suffering"); *Washington v. O'Neill*, 700 P.2d 711, 725 (Wash. 1985) (WPA's purpose is "to protect the privacy of ***individuals***" (emphasis added)). Plaintiffs' interpretation requires the Court to assume these terms have no meaning, which contravenes basic standards of statutory interpretation. *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires [a court] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'") (citations omitted)). Instead of grappling with the plain meaning of the statute, Plaintiffs point to various dictionary definitions of "persons" as including corporate entities. Notably, they resort to the *sixth* alternative definition from Merriam-Webster. Plaintiffs cannot seriously claim such a deep dive is necessary to divine the "plain" and "ordinary" meaning of the term. In any case, a court must interpret the plain words of a statute as those words are actually used in the statute. *United States v. Flores*,

Cooley LLP
Attorneys At Law
San Francisco

9.

Defendant Microsoft Corporation's
Reply ISO Motion To Dismiss;
Case No. 4:20-cv-04818-YGR

729 F.3d 910, 914 (9th Cir. 2013).  Here, the statute's use of personal pronouns "his or her" to refer to "person" makes clear the legislature intended "person" to mean individuals, not entities.

That "organizations can be liable as defendants" under the WPA does not change this result.  Opp. at 14.  The fact a statute regulates entities does not mean it thereby also *protects* entities— especially in the face of a private right of action providing otherwise.  Plaintiffs' cases did not analyze this issue and therefore, are not persuasive.  *See, e.g.*, *Jinni Tech Ltd. v. Red.com, Inc.*, No. C17-0217, 2017 WL 4758761, at *16 n.17 (W.D. Wash. Oct. 20, 2017) (noting "defendants do not argue for dismissal" of the WPA claim and so the court never considered this issue).

Even if all that were otherwise (and it is not), Microsoft showed the WPA does not apply extraterritorially.  Mot. at 16-17; *Washington v. Fowler*, 139 P.3d 342, 347 (Wash. 2006) ("the test for whether a recording of a conversation or communication is lawful is determined under the laws of the place of the recording"); *Kadoranian v. Bellingham Police Dep't*, 829 P.2d 1061, 1065 (Wash. 1992) ("interceptions and recordings occur where made").  Plaintiffs respond by arguing *Fowler* authorizes a WPA claim against any Washington entity regardless the location of the recording.  Opp. at 15-16.  But the language Plaintiffs quote reinforces that the recording must be "for use . . . in Washington[.]" *Fowler*, 139 P.3d at 347.  Here, Plaintiffs allege no facts showing any interception, much less an interception "for use in Washington" or occurring in Washington.  This is fatal to their claim.  *Brinkley v. Monterey Fin. Servs.*, 16-cv-1103, 2019 WL 4295327, at *3 (S.D. Cal. May 6, 2019) (granting motion to dismiss WPA claim because "the complaint fails to allege any recordings which were made in Washington in violation of RCW 9.73.030").

Finally, Plaintiffs make no attempt to identify factual allegations showing they would have paid less or not subscribed to Microsoft 365 services but for Microsoft's alleged misrepresentations.  Opp. at 16.  This defeats their WPA claim, which explicitly requires the plaintiff to show "a violation of this statute has injured his or her business, his or her person, or his or her reputation."  Wash. Rev. Code § 9.73.060.  Plaintiffs therefore may not base their WPA claim on a theoretical violation of some other law, such as the CPA.  Because Plaintiffs do not allege an "injury" caused by the alleged WPA violation, their WPA claim fails.  *Id.*; *see also Brinkley v. Monterey Fin. Servs., LLC*, 340 F.Supp.3d 1036, 1045 n.3 (S.D. Cal. 2018) (granting motion to dismiss WPA claim because the plaintiff failed

Cooley LLP
Attorneys At Law
San Francisco

10.

Defendant Microsoft Corporation's
Reply ISO Motion To Dismiss;
Case No. 4:20-cv-04818-YGR

to sufficiently allege she had been "injur[ed]").

### F.    Plaintiffs Do Not Allege Essential Elements of Their CPA Claim.

#### 1.    Plaintiffs Fail to Satisfy Rule 9(b).

Rule 9(b)'s heightened pleading standard applies because the Complaint accuses Microsoft of essentially fraudulent conduct.  While Plaintiffs were not *required* to allege an intent to deceive, they chose to base their CPA claim on allegations that Microsoft intentionally misrepresented its data sharing practices to induce customers' purchases—an assertion they repeat throughout their Opposition.  Compl. ¶¶ 2-8, 45-113, 166, 185; Opp. at 1-5, 22-24.  Having made that choice, they subjected their CPA claim to Rule 9(b)'s particularity requirement.  *See* Mot. at 18 (citing cases).[3]

Among the circumstances of the alleged fraud that must be stated with particularity is which alleged misrepresentations a plaintiff viewed and when he or she viewed them.  *See Water & Sanitation Health, Inc. v. Rainforest Alliance, Inc.*, No. C15-75, 2015 WL 12657110, at *3 (W.D. Wash. Dec. 29, 2015).  Plaintiffs do not distinguish *Water & Sanitation Health* or assert it applies the wrong standard to Rule 9(b); instead, they cite inapposite cases that do not address deception-based CPA claims.  Plaintiffs' failure to allege whether or when they viewed Microsoft's purported misrepresentations, or which alleged misrepresentations they viewed, means they do not satisfy Rule 9(b).  In any event, Plaintiffs' failure to allege facts establishing causation or injury compels dismissal.

#### 2.    Plaintiffs Do Not Allege Facts Showing Causation.

Plaintiffs agree they must allege facts sufficient to show that but for Microsoft's alleged deceptive practice, they would not have suffered injury to business or property.  Opp. at 18.  But neither the Complaint nor the Opposition points to any alleged facts showing they either would not have purchased Microsoft's services, or would have paid less for those services, but for the alleged misrepresentations.

*First*, Plaintiffs effectively concede that they do not allege they reviewed any of Microsoft's

---

[3] Plaintiffs' cited authorities do not involve CPA claims based on allegations of fraudulent conduct. *See Grigsby v. Valve Corp.*, No. C12-0553, 2013 WL 12310666, at *3 (W.D. Wash. Mar. 18, 2013) ("[A] review of Mr. Grigsby's allegations reveals that he has not alleged fraud as an element of his WCPA claim or 'grounded' his WCPA claim in fraud."); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F.Supp.2d 1256, 1264–65 (W.D. Wash. 2009) (declining to apply Rule 9(b) where plaintiff did not allege intent to deceive).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR

purported misrepresentations in deciding whether and which Microsoft services to buy, much less how those supposed misrepresentations impacted their purchasing decisions. Holding Plaintiffs to this burden does not run afoul of *Schnall*, which concluded reliance is not "necessarily an element of the plaintiff's case" but left causation intact. *Schnall v. AT & T Wireless Servs., Inc.*, 259 P.3d 129, 137 (Wash. 2011). Rather, such a requirement reflects the bare minimum necessary to establish but-for causation. Without such allegations, Plaintiffs have no facts establishing a causal connection between Microsoft's alleged deception and Plaintiffs' purchase of the products at issue. This is fatal to their CPA claim. *See* Mot. at 20-21 (citing cases).

Plaintiffs' argument that certain alleged misrepresentations were contained in Plaintiffs' contracts with Microsoft (Opp. at 20) does not establish but-for causation. Notably, Plaintiffs do not allege a breach of contract claim. Regardless, the Complaint does not allege Plaintiffs read the contracts or that the alleged misstatements in the contracts caused them to purchase Microsoft's products. What's more, Plaintiffs cite no authority entitling them to such a presumption.[4] In any event, the presence of certain statements in Plaintiffs' contracts with Microsoft cannot support an assertion that Plaintiffs' injury was caused by any of the extra-contractual statements alleged in the Complaint, which Plaintiffs do not allege they ever saw before buying the services.

*Second*, Plaintiffs allege no facts from which the Court could plausibly infer that Microsoft's alleged misrepresentations caused the price of its services to be inflated. If anything, Plaintiffs' Complaint shows Plaintiffs got precisely what they paid for and even continue to use the services, including services that protect the security of their data. Plaintiffs cannot save their CPA claim by simply concluding the products they purchased were worth less than what they paid. *See Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723 (9th Cir. 2017) (affirming dismissal of deceptive marketing claims for lack of injury based on overpayment theory because plaintiffs failed to allege facts supporting the conclusion the produce was worth less due to alleged defects). Plaintiffs do not

---

[4] Plaintiffs' cases do not support finding a presumption here, as they concerned issues of proving causation on a class-wide basis on class certification. *See, e.g.*, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633, 2017 WL 539578, at *4–5 (D. Or. Feb. 9, 2017) (noting where all putative class members received same alleged misrepresentations, the problems associated with proving reliance at the class certification stage "may be somewhat relaxed").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR

even attempt to distinguish *Cahen* and cite no authority to the contrary. *Kelley v. Microsoft Corporation* does not help Plaintiffs. That case did not permit bare assertions of price inflation, with no supporting factual allegations, to survive dismissal. 251 F.R.D. 544, 559 (W.D. Wash. 2008) (finding common issues predominated on plaintiffs' price inflation theory at class certification stage).

### 3. Plaintiffs Do Not Allege Facts Showing Injury.

Plaintiffs' Complaint alleges they were injured because Microsoft's alleged data-sharing practices placed their data "at risk[,]" without specifying what that risk was. Compl. ¶ 167. In their Opposition, Plaintiffs now claim their injury is that "their data was actually disclosed[.]" Opp. at 21. Plaintiffs did not plead this injury and cannot use their opposition brief to amend the Complaint. *Morgan v. Aurora Loan Servs., LLC*, 646 F. App'x 546, 549 n.2 (9th Cir. 2016) (court may not consider allegation first raised in plaintiff's opposition to defendant's motion to dismiss; "in determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers." (emphasis in original) (citations omitted)).

In any event, Plaintiffs fail to explain—in their Complaint or in their Opposition—how the alleged disclosure constitutes harm to their business or property, as required under the CPA. *See Keodalah v. Allstate Ins. Co.*, 449 P.3d 1040, 1047 (Wash. 2019). As Microsoft showed, CPA claims premised on the disclosure of information can only proceed where there are allegations of discrete harm caused by that disclosure. *See* Mot. at 22 (citing cases).[5] Plaintiffs cite no authority to the contrary, nor do they allege discrete harm caused by Microsoft's alleged disclosure of their data.

### G. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion.

Plaintiffs concede businesses cannot bring intrusion upon seclusion claims. Opp. at 22. This requires dismissing Koonan Litigation Consulting LLC's and Sumner N. Davenport & Associates LLC's intrusion upon seclusion claims. While Russo attempts to preserve an intrusion upon seclusion claim, his arguments do not cure the Complaint's fatal defects.

*First*, Russo—like the other Plaintiffs—seeks only to protect business information in which he

---

[5] As explained in Section F.2. above and in Microsoft's Motion, Plaintiffs' conclusory allegations that the services they bought are worth less than what they paid for due to the alleged data-sharing practices do not establish injury under the CPA.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR

has no actionable personal privacy interest.  The Complaint alleges Russo's subscription is for an Office 365 business service and he used Office 365 "in the course of his business."  Compl. ¶¶ 14-15.  And Plaintiffs purport to sue only on behalf of a putative class of "Microsoft business customers."  *Id.* ¶ 116.  While Russo argues he "sues for Microsoft's intrusion of *his* information" (Opp. at 22), the single allegation supporting that argument is a conclusory assertion that does not specify any personal—as opposed to business—information Microsoft allegedly intruded upon.  Compl. ¶ 177.  Russo has not alleged intrusion on anything other than business information, in which he has no personal privacy right.  His claim fails.

*Second*, Russo's claim fails because he bases it on alleged *disclosure* of data, to which the claim of intrusion upon seclusion does not apply.  More specifically, Russo argues Microsoft committed an intrusion because it "shar[ed] his data and us[ed] it for its own purposes."  Opp. at 22.  Sharing and using information, however, is governed by a different Washington tort:  disclosure, not intrusion upon seclusion.  *Buckley v. Santander Consumer USA, Inc.*, No. C17-5813, 2018 WL 1532671, at *7 (W.D. Wash. Mar. 29, 2018).  The intrusion tort only measures the defendant's conduct in accessing the information.  *Id.*  Here, if Microsoft accessed Russo's data at all (which he does not adequately allege, as discussed above), it could only have done so because Russo signed up for a subscription and placed his own data on Microsoft's services.  Compl. ¶¶ 14, 22, 29-33, 46.  Because any access to Russo's data resulted from Russo's own acts, he cannot claim that access was an intentional intrusion upon his seclusion.  *See Buckley*, 2018 WL 1532671, at *7.[6]

*Third*, Russo cannot establish Microsoft engaged in "highly offensive" conduct when it allegedly accessed data Russo provided to it.  In arguing otherwise, Russo again conflates intrusion with disclosure by arguing Microsoft's alleged data-*sharing* practices are "highly offensive."

---

[6] Plaintiffs cite *Opperman v. Path, Inc.*, 87 F.Supp.3d 1018 (N.D. Cal. 2015), for the proposition that Microsoft's alleged deceit regarding its data-sharing practices negates Russo's consent to Microsoft accessing his data.  Opp. at 22.  But *Opperman* involved apps copying users' address books and uploading them to the apps' own servers when the users consented only to the apps "scanning" their address books to "find friends" using the same app (or without any consent at all).  *Id.* at 1032-33, 1059-61.  Unlike in *Opperman*—which analyzes California's intrusion tort, not Washington's— Plaintiffs' allegations here show they voluntarily provided their data to Microsoft, as opposed to Microsoft surreptitiously stealing information it was not otherwise entitled to possess.  *See id.* at 1061 (noting plaintiffs alleged "surreptitious theft of personal contact information").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

**DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR**

1    Microsoft's alleged disclosure of Russo's data is not actionable via an intrusion claim.  And Russo

2    does not—and cannot—argue there is anything "highly offensive" about Microsoft allegedly having

3    access to information Russo himself placed on Microsoft's servers after subscribing to Microsoft

4    services.  In any event, as explained above and in Microsoft's Motion, the Complaint's allegations

5    show any alleged data-sharing occurred in the ordinary course of business and therefore constitutes

6    "routine commercial behavior" that is not highly offensive.  *Folgelstrom v. Lamps Plus, Inc.*, 195

7    Cal.App.4th 986, 992 (2011).[7]

8           *Finally*, Russo fails to allege injury.  He argues he incurred "the considerable time and expense

9    of acting to 'protect himself'" against Microsoft's supposed intrusion is not supported by the

10   Complaint.  Opp. at 25 (citing Compl. ¶¶ 19, 187).  All the Complaint pleads is "Russo has started

11   exploring what actions he can take, other than filing this lawsuit, to protect himself from the actions

12   by Microsoft."  Compl. ¶ 19.  That allegation does not describe any injury sufficient to support an

13   intrusion claim.   Russo's complaint about harm supposedly suffered from Microsoft's alleged

14   disclosure of Plaintiffs' data again conflates Washington's privacy torts.  Disclosure is not actionable

15   via an intrusion claim and harm from disclosure is not harm from intrusion.  *See Buckley*, 2018 WL

16   1532671, at *7.  In any event, Russo does not explain how Microsoft's alleged disclosure of his data

17   harmed him.  Plaintiffs' own authority acknowledges a plaintiff must allege harms such as "anxiety,

18   embarrassment, humiliation, shame, depression, feelings of powerlessness, anguish, etc." stemming

19   from the intrusion.  *Opperman*, 87 F.Supp.3d at 1061.  Russo alleges no such harm and thus fails to

20   plead injury.

21          **III.    CONCLUSION**

22          For the reasons stated here and in Microsoft's Motion to Dismiss, the Court should dismiss

23   Plaintiffs' Complaint under Rule 12(b)(6) for failure to state a claim with prejudice.

24

25   _____

26   [7] Plaintiffs' cited cases involve egregious behavior that was not routine commercial conduct.  *See Opperman*, 87 F.Supp.3d at 1061 ("surreptitious theft of personal contact information"); *Murphy v. Spring*, 58 F.Supp.3d 1241, 1271 (N.D. Okla. 2014) (employer read employee's private emails);

27   *Fischer v. Mt. Olive Lutheran Church, Inc.*, 207 F.Supp.2d 914, 921 (W.D. Wis. 2002) (pastor surreptitiously accessed employee's private email account); *Ali v. Douglas Cable Commc'ns*, 929

28   F.Supp. 1362, 1383 (D. Kan. 1996) (employer recorded employees' personal phone calls).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR

1    Dated:  November 23, 2020                    By: /s/ Michael Rhodes
2                                                 COOLEY LLP
                                                  Michael G. Rhodes (116127)
3                                                 Whitty Somvichian (194463)
                                                  Priyamvada Arora (301207)
4                                                 Colin S. Scott (318555)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

DEFENDANT MICROSOFT CORPORATION'S
REPLY ISO MOTION TO DISMISS;
CASE NO. 4:20-CV-04818-YGR